**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALISON CREDIT, ) | |
| ) | |
| Plaintiff, ) | No. 1:24-CV-03196 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| PROMEDICA EMPLOYMENT SERVICES ) | |
| LLC; OAK LAWN EAST SKILLED ) | |
| NURSING FACILITY LLC; and LEGACY ) | |
| HEALTHCARE FINANCIAL SERVICES ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Alison Credit worked for several years as a Housekeeping Manager at the Warren Barr Oak Lawn rehabilitation center. R. 1, Compl. ¶ 8.[1] In November 2022, she went on medical leave, and was diagnosed with colon cancer, requiring an extension of her leave until early April 2023. *Id.* ¶¶ 10–16. In the meantime, Credit's employer, Promedica, was acquired by Legacy Healthcare. *Id.* ¶ 14. As part of the transition to Legacy Healthcare, Credit received a new job-offer letter that told her to return to work on March 1, 2023. *Id.* ¶ 21. But before Credit could return to work, she was informed that her employment was being terminated. *Id.* ¶ 23.

So Credit brought this suit against her employers—Promedica, Legacy Healthcare, and Warren Barr—claiming that they violated the Family and Medical

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Leave Act (FMLA), 29 U.S.C. § 2611, *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and that they retaliatorily discharged her from her job. Compl.[2] The Defendants now move to dismiss the Complaint, asserting that Credit fails to state a claim for relief. R. 25, Defs.' Mot. The motion is granted because Credit took more than 12 weeks of leave, was unable to work during the leave, and she does not adequately allege that she was a qualified individual with a disability. But the dismissal is without prejudice, and she can submit an amended complaint.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In April 2017, Alison Credit began working as a Housekeeping Manager at the Warren Barr Oak Lawn rehabilitation center. Compl. ¶ 8. Over five years into her tenure there, on November 16, 2022, Credit went on leave to undergo a planned surgery and was scheduled to return to work on December 30, 2022. *Id.* ¶¶ 10–11. The leave had been previously approved by Credit's employer, Promedica, pursuant to the FMLA. *Id.* ¶ 10. But when Credit was on leave, she was diagnosed with colon cancer. *Id.* ¶ 12. So on December 14, 2022, Credit extended her FMLA leave until February 1, 2023, to give her time to undergo chemotherapy. *Id.* ¶ 15. After Credit started experiencing side effects from her chemotherapy, she reached

---

[2] The Court has jurisdiction over the federal claims under 28 U.S.C. § 1331, and exercises supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

2

out to Promedica and told them that she would need to remain on leave until April 3, 2023. *Id.* ¶¶ 16–17.

In the meantime, Promedica was acquired by another company, Legacy Healthcare. *Id.* ¶ 14. As part of the transition from Promedica to Legacy Healthcare, Credit received a new job-offer letter. *Id.* ¶ 21. That letter told Credit that her tentative first day back at work would be March 1, 2023. *Id.* Based on this new return date, Credit contacted her doctor to see if she would be ready to return to work on March 1 instead of April 3. *Id.* ¶ 22. Her doctor approved that new return date. *Id.* But before Credit could return to work, she received a call on February 24, 2023, informing her that her employment was being terminated. *Id.* ¶ 23.

So Credit brought this suit against her employers: Promedica, Legacy Healthcare, and Warren Barr Rehabilitation Center. Compl. She alleges that by terminating her, the Defendants violated the FMLA and the ADA. *Id.* at 5–9. Credit also brings a claim for retaliatory discharge. *Id.* at 9–10. The Defendants now move to dismiss the Complaint, arguing that Credit fails to adequately state a claim for relief. Defs.' Mot.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests."

3

*Twombly*, 550 U.S. at 555 (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. Family & Medical Leave Act

Credit alleges that the Defendants "interfered with, restrained, and/or denied the exercise of or the attempt to exercise Credit's fundamental FMLA rights" by terminating her on February 24, 2023, and by not reinstating her as a Housekeeping Manager after her FMLA leave. Compl. ¶ 36. In response, the Defendants argue that

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

the claim fails because she was no longer entitled to FMLA leave at the time that she was terminated, even accepting all of her allegations as true. Defs.' Mot. at 3–4. The Defendants are correct.

To adequately state an FMLA interference claim, Credit must allege that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). One of the benefits provided by the FMLA is that eligible employees have "the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period because of a serious health condition." *Lewis v. School Dist. 70*, 523 F.3d 730, 741 (7th Cir. 2008). "After the period of qualified leave expires and the employee returns to work, she is entitled to be reinstated to her former position." *Id*. But an employee "has no right to reinstatement … if, at the end of [her] twelve-week period of leave, [s]he is either unable or unwilling to perform the essential functions of [her] job." *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008).

Here, Credit began her approved FMLA leave on November 16, 2022. Compl. ¶ 10. That means that her FMLA leave expired on February 9, 2023—twelve weeks later. But even Credit alleges that she was not yet able to come back to work at that time. *Id*. ¶¶ 16, 22. Instead, she planned to come back to work on March 1 at the earliest. *Id*. ¶ 22. So when Credit was terminated on February 24, her period of protected FMLA leave had already expired on February 9, and she was still unable to

5

return to work. *Id.* ¶ 23. Thus, Credit had no right to reinstatement at the time of her termination. *Franzen*, 543 F.3d at 426. And because Credit had no right to reinstatement, the Defendants did not deny her FMLA benefits by terminating her employment on February 24. Her FMLA interference claim thus fails as currently alleged.

Credit responds that she was entitled to an extension of her FMLA leave beyond the ordinary 12 weeks because the Defendants gave her a new job-offer letter that told her to return to work on March 1. R. 31. Pl.'s Resp. Br. at 3. Unfortunately, Credit offers no statutory or case-law support for the contention that a new job offer—for an offer that was not yet accepted and for a job that had not yet begun—triggers an extension of pre-existing FMLA benefits. *See id.* And the text of the FMLA does not support her argument. The FMLA entitles employees "to a total of 12 workweeks of leave during any 12-month period …." 29 U.S.C. § 2612(a)(1). Nothing in the statutory text extends the time period based on a new offer letter, particularly before the offer was accepted and before the new job was to begin. The statute speaks to intermittent leave, use of other paid leave, and other topics, § 2612(b), (d), but there is no mention of expanding simply because a new job offer has been extended. So, once the 12-week FMLA leave period expired on February 9 and Credit was still unable to return to work, the Defendants were free to terminate Credit without running afoul of the FMLA. *See Franzen*, 543 F.3d at 426. That remains true even though the Defendants tentatively told Credit to return to work on March 1. It is true that there does not seem to be anything on the current record (which is sparse and only presents Credit's version) that would have prevented the employer from extending some

6

flexibility in this situation. But the current Complaint does not properly state a claim for FMLA interference.

### B. Americans with Disabilities Act

Next, the Defendants assert that the ADA claim fails because Credit had not adequately alleged that she is a "qualified individual with a disability," which is required for protection under the ADA. Defs.' Mot. at 4–5. Again, the Defendants are correct.

Generally speaking, the ADA's protections extend only to a "qualified individual with a disability." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996). To decide whether an individual is qualified, courts first consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id.* (cleaned up). If so, courts next consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id.* (cleaned up). Under that test, if an individual is entirely unable to work for an extended period of time, she is not considered a qualified individual with a disability. As the Seventh Circuit has explained, "[n]ot working is not a means to perform the job's essential functions. An inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the employer must excuse the inability." *Byrne v. Avon Prods., Inc.,* 328 F.3d 379, 381 (7th Cir. 2003). In other words, "if one is not able to be at work, one cannot be a qualified

7

individual.… Inability to work for a multi-month period removes a person from the class protected by the ADA." *Id.* (cleaned up).

That is precisely the case here. Credit notes that she was entirely unable to work from November 16, 2022, through at least March 1, 2023, due to her surgery and cancer treatment. Compl. ¶¶ 10, 15–16, 22. That means that regardless of whether the Defendants provided a reasonable accommodation to Credit, she was not able to perform the essential functions of her job for a multi-month period. So Credit's own allegations admit that she was not a qualified individual with a disability, and thus the ADA's protections did not apply to her when she was terminated.

Credit counters that she is a qualified individual because a three-week extension of her leave (from February 9 to March 1) would have constituted a reasonable accommodation. Pl.'s Resp. Br. at 7. But the Seventh Circuit has already rejected the notion that an extension of leave should be viewed as a reasonable accommodation. In *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 483 (7th Cir. 2017), the Seventh Circuit reasoned that if "employees are entitled to extended time off as a reasonable accommodation, the ADA is transformed into a medical-leave statute—in effect, an open-ended extension of the FMLA. That's an untenable interpretation of the term 'reasonable accommodation.'" *Id.* at 483. Thus, Credit's attempt to frame her request for an extension of her FMLA leave as a reasonable accommodation under the ADA fails. Credit was unable to perform her job's essential functions during the extended absence from work, so she was not a qualified individual with a disability. The ADA does not apply to Credit, and the claim fails.

8

### C. Retaliatory Discharge

In the Complaint, Credit alleges that the "Defendants' termination of [her] in retaliation for taking FMLA leave was retaliatory and in violation of the clearly mandated public policy of the United States of America, and the state of Illinois." Compl. ¶ 54. But then in her response brief, Credit concedes that her retaliatory discharge claims cannot be based on her FMLA leave. Pl.'s Resp. Br. at 9. So instead, Credit recasts the claim as an ADA-retaliation claim. *Id.* But that reframing effort is unsuccessful.

The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up). Here, the retaliatory discharge claim in the Complaint focuses exclusively on her taking FMLA leave. Compl. at 9–10. Although the Complaint does include a separate, substantive ADA claim, it does not set forth an ADA-*retaliation* claim. *Id.* The only mention of retaliation in the Complaint comes in the context of the FMLA. *Id.* So Credit's response brief, by stating that her retaliation claim is now based on the ADA instead of the FMLA, presents an entirely new theory of retaliation. The Defendants thus did not have fair notice of that particular retaliation claim. Credit cannot change the premise of that claim through her response brief.

But even if the Court were to consider the newly presented ADA-retaliation claim, that claim would still fail. To adequately state a retaliation claim under the ADA, a plaintiff must allege that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists

9

between the protected activity and the adverse action. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007) (cleaned up). Credit asserts that she "engaged in a statutorily protected activity when she sought a reasonable accommodation of returning to work on March 1, 2023." Pl.'s Resp. Br. at 11. But as explained above, extending FMLA leave is not a reasonable accommodation. *Severson*, 872 F.3d at 483. So if Credit was requesting the extension as a reasonable accommodation, then she was not requesting a viable accommodation as a matter of law. And that means Credit did not engage in a statutorily protected activity that could give rise to an ADA-retaliation claim. It would be one thing if Credit had sought an accommodation that even though ultimately turned out to be unreasonable, was at least within the realm of possibility. But here the request was not viable as a matter of law. Credit thus fails to state a claim for either common law retaliatory discharge or ADA retaliation.

## IV. Conclusion

The Defendants' motion to dismiss, R. 25, is granted. The Complaint is dismissed without prejudice, so Credit may amend the Complaint if she believes that she can fix the issues identified in this Opinion. The amended complaint is due by August 25, 2025. If no amended complaint is filed, then the case will be dismissed with prejudice.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 12, 2025