UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Alison Credit,<br><br>Plaintiff,<br><br>v.<br><br>ProMedica Employment Services LLC, Oak Lawn East Skilled Nursing Facility LLC d/b/a Warren Barr Oak Lawn, and Legacy Healthcare Financial Services LLC d/b/a Legacy Healthcare,<br><br>Defendants. | NO. 1:24-CV-03196<br><br>Judge Edmond E. Chang |

## MEMORANDUM OPINION AND ORDER

Alison Credit was fired a few weeks after she exhausted her leave under the Family and Medical Leave Act (commonly referred to as the FMLA), 29 U.S.C. § 2611 *et seq*. R. 51, First Am. Compl. ¶¶ 1–2, 34.[1] She alleges that her employer violated the FMLA, as well as the Americans with Disabilities Act (commonly known as the ADA), 42 U.S.C. § 12101 *et seq*., and Illinois common law. First. Am. Compl. ¶ 1.[2] The Defendants, ProMedica Employment Services LLC, Oak Lawn East Skilled Nursing Facility LLC (doing business as Warren Barr Oak Lawn), and Legacy Healthcare Financial Services LLC (doing business as Legacy Healthcare), move to dismiss all

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

claims. R. 55, ProMedica's Mot.; R. 58; Legacy Defs.' Mot. The motions are granted in part and denied in part. Because Credit plausibly alleges violations of the ADA, the motions to dismiss are denied as to those claims. But the motions are granted as to the rest of Credit's claims, which are dismissed with prejudice.

## I. Background

For the purposes of these motions, the Court accepts as true the factual allegations in Credit's First Amended Complaint and draws all reasonable inferences in her favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam)).

For over five years, Credit worked as a Housekeeping Manager at the Warren Barr Oak Lawn rehabilitation center. First Am. Compl. ¶¶ 5, 10–11. In November 2022, Credit needed surgery. *Id.* ¶ 11. She applied for and was approved to take leave under the FMLA through February 9, 2023. *Id.* In December 2022, while on leave, Credit was diagnosed with colon cancer and started chemotherapy. *Id.* ¶ 12. She informed her employer, ProMedica, about her diagnosis and treatment. *Id.* ¶ 13.

That winter, the rehabilitation center's corporate operations were transitioning from ProMedica to Warren Barr and Legacy. First Am. Compl. ¶ 15. In January 2023, while Credit was still on leave, Warren Barr asked her to complete onboarding paperwork online for her anticipated return. *Id.* And in early February 2023, a ProMedica human-resources officer asked Credit to come in person to continue onboarding and complete her healthcare benefit enrollment. *Id.* ¶ 16. Credit met with a Legacy human-resources employee on February 11 to complete her paperwork. *Id.* ¶ 17.

Credit told the employee that she was still on medical leave, and they told her to "get better." *Id.*

That same day, Warren Barr and Legacy sent Credit an offer letter that confirmed she would return to work March 1, 2023. First Am. Compl. ¶ 18. Credit's physician medically cleared her to return to work on that date. *Id.* ¶ 14. But Credit says that she could have returned to work slightly earlier—by mid-February 2023—with reasonable accommodations, such as light-duty work, schedule flexibility for medical appointments, and reassignment of nonessential tasks. *Id.* ¶¶ 19, 29.

On February 24, 2023, before Credit was scheduled to return to work, she was fired over the phone by a Warren Barr employee. First Am. Compl. ¶ 20. When Credit asked for a written explanation for her termination, the employee refused and told Credit she could "reapply for a job when [she got] better." *Id.* ¶ 21. The next day, Warren Barr and Legacy posted a public job advertisement for Credit's position at the rehabilitation center. *Id.* ¶ 22.

Credit sued ProMedica, Warren Barr, and Legacy, alleging that her termination violated the FMLA, ADA, and Illinois law. R. 1, Compl. ¶¶ 29–56. The Defendants moved to dismiss, R. 25, Legacy Defs.' First Mot.; R. 28, ProMedica's First Mot., and the Court dismissed the initial complaint without prejudice, R. 41, 08/12/2025 Op. at 10. Credit filed the First Amended Complaint. *See* First Am. Compl. The Defendants again move to dismiss. ProMedica's Mot.; Legacy Defs.' Mot. Because Warren Barr and Legacy incorporate by reference ProMedica's arguments into their motion to dismiss, Legacy Defs.' Mot. ¶ 1, the Court discusses only ProMedica's motion.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

### A. FMLA Interference and Common Law Retaliation

In her response brief, Credit withdraws the First Amended Complaint's first count—for interference with her rights under the FMLA—and sixth count—for common law retaliatory discharge. R. 60, Pl.'s Resp. Br. at 2. Because Credit does not oppose the dismissal of those claims, they are dismissed with prejudice.

### B. FMLA Retaliation

Credit alleges that she was fired in retaliation for taking FMLA leave. First Am. Compl. ¶¶ 32–37. Employers cannot retaliate against employees for their exercise of FMLA rights, including taking FMLA leave. 29 U.S.C. § 2615(a)(2); *Pagel v. TIN, Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). For retaliation claims, "an employee can proceed under the direct or indirect method of proof." *Pagel*, 695 F.3d at 631. Under the direct method, on which Credit relies, *see* Pl.'s Resp. Br. at 2–3, she must plausibly allege that "(1) [s]he engaged in a protected activity; (2) [her] employer took an adverse employment action against [her]; and (3) there is a casual connection between the protected activity and the adverse employment action." *Pagel*, 695 F.3d at 631.[4]

---

[4]The Seventh Circuit's "cases have not been fully consistent about the causation standard for an FMLA retaliation claim." *Chitwood v. Ascension Health All.*, 168 F.4th 493,

ProMedica argues that Credit has not plausibly alleged the third element. ProMedica's Mot. at 10–11. Credit responds that three facts raise a plausible inference of retaliatory motive: (1) the termination of her employment around two weeks after she exhausted her FMLA leave; (2) the Warren Barr employee's instruction to reapply when she "got better"; and (3) the almost-immediate posting of a job advertisement for her position after she was fired. Pl.'s Resp. Br. at 3. Circumstantial evidence of causation "may include suspicious timing" or "ambiguous statements from which a retaliatory intent can be drawn." *Pagel*, 695 F.3d at 631. But here, none of Credit's alleged facts plausibly suggest that she was fired in retaliation for taking FMLA leave.

First, the timing of her termination does not raise an inference of causation. The relevant timeframe begins not when Credit exhausted her FMLA leave, but when she first told ProMedica that she was *taking* leave. *See Goelzer v. Sheboygan County*, 604 F.3d 987, 996 (7th Cir. 2010) (analyzing causation based on when the employer knew that the employee would take FMLA leave). Credit was fired about three months after she requested leave. *See* First Am. Compl. ¶ 11 (requested leave in November 2022); *id.* ¶ 20 (fired on February 24, 2023). In general, suspicious timing by itself is rarely enough to suggest causation. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828–29 (7th Cir. 2014). And here, the several months-long gap between Credit's

498 n.2 (7th Cir. 2026). But because "[t]he distinction between 'but-for causation' and 'substantial or motivating factor' makes no difference in this case, and neither [of] the parties … focused on this issue," the Court does not opine on it further. *See id.*

notice of FMLA leave and her termination is too long to plausibly suggest that she was fired in retaliation for taking FMLA leave. *See id.* ("Even intervals shorter than four months are unlikely, standing alone, to establish the causation element of a retaliation claim.").

Second, Credit points to the Warren Barr employee's instruction that she could "reapply for a job when [she got] better." First Am. Compl. ¶ 21; Pl.'s Resp. Br. 3. But even when viewed in Credit's favor, this statement does not plausibly suggest retaliation against Credit for using FMLA leave. Credit had already been allowed to take her full 12 weeks of FMLA leave without incident. But she was fired—and the employee made this statement—after she requested several more weeks of leave. So at most, this statement suggests that Credit was fired because she requested more time off after she exhausted her FMLA leave—not because she took FMLA leave in the first place. *See Chitwood*, 168 F.4th at 499–500; *Kuklenski v. Medtronic USA, Inc.*, 635 F. Supp. 3d 726, 738 (D. Minn. 2022). Thus, this statement does not support a causal connection between Credit's FMLA leave and her termination.

Third, the fact that Warren Barr and Legacy posted an advertisement for Credit's position after she was fired does not suggest that they had a retaliatory motive. This argument is unpersuasive; after Credit was fired, her position needed to be filled. But this fact suggests nothing about the Defendants' motive for firing Credit in the first place.

Because Credit alleges no facts that plausibly suggest she was fired in retaliation for taking FMLA leave, she fails to state this claim. And because this is Credit's

second attempt to plausibly allege an FMLA retaliation claim, *see* 08/12/2025 Op. at 9, and she has failed again, the claim is dismissed with prejudice, *see Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

**C. ADA**

**1. Discrimination and Failure to Accommodate**

"Unlawful discrimination under the ADA includes both discriminatory discharge and the failure to provide reasonable accommodation." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996); 42 U.S.C. § 12112(a), (b)(5)(A). Credit brings both types of claims, alleging that the Defendants failed to accommodate her and fired her because of her disability (her colon-cancer diagnosis and treatment). First Am. Compl. ¶¶ 38–44, 48–50.

To state either claim, Credit must plausibly allege that she was a "qualified individual with a disability." *Bombard*, 92 F.3d at 563; 42 U.S.C. § 12112(a). The ADA defines a "qualified individual" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). The Court uses a two-step inquiry to determine whether someone meets that definition. *Bombard*, 92 F.3d at 563. First, the Court considers "whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id.* (cleaned up). If she does, then the Court considers "whether or not the individual can perform the essential functions of the position held or

desired, with or without reasonable accommodation." *Id.* (cleaned up). This determination is "made as of the time of the employment decision." *Id.* (cleaned up).

Here, ProMedica does not dispute that Credit satisfied the prerequisites for her position, meeting the first step of the inquiry. ProMedica's Mot. at 7–8. And at the second step, Credit does not argue that she could have returned to work on February 24 (when she was fired) and performed the essential functions of her job *without* reasonable accommodation. Pl.'s Resp. Br. at 4–5. Thus, the inquiry at the second step turns on whether Credit has plausibly alleged that she could have performed the essential functions of her job *with* reasonable accommodation on February 24. In her response brief, Credit contends that she requested two alternative accommodations that would have been reasonable: (1) an extension of her leave until March 1, or (2) an earlier return date in mid-February with light-duty work. Pl.'s Resp. Br. at 4–5.

As discussed in the Court's prior Opinion, the first request was not a reasonable accommodation under the ADA. *See* 08/12/2025 Op. at 7–8. The ADA provides that reasonable accommodations may include "part-time or modified work schedules." 42 U.S.C. § 12111(9)(B). But in *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476 (7th Cir. 2017), the Seventh Circuit held that "a long-term leave of absence cannot be a reasonable accommodation." *Id.* at 481. Again, a reasonable accommodation must enable a person to perform the essential functions of their job, otherwise they are not a qualified individual. *Id.*; 42 U.S.C. § 12111(8). "Not working is not a means to perform the job's essential functions." *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). In other words, "an extended leave of absence does not give a disabled

individual the means to work; it excuses his *not working*." *Severson*, 872 F.3d at 481 (emphasis added). *Severson*'s holding squarely applies here. After taking 12 weeks of FMLA leave, Credit asked to extend her leave for several more weeks. First Am. Compl. ¶¶ 11, 14. Extending Credit's leave would have excused her from performing her job for an extended period of time, and thus was not a reasonable accommodation.

In response, Credit points to language in *Severson* that "a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances." 872 F.3d at 481; *see* Pl.'s Resp. Br. at 4–5. But that statement was not necessary to the holding of the case. *See Severson*, 872 F.3d at 481 (holding that the plaintiff's request for multiple months of leave was not a reasonable accommodation). In any event, a close reading of *Severson* makes clear that the narrow circumstances in which leave would be a reasonable accommodation do not apply here. *Severson* says that "time off may be an apt accommodation for *intermittent* conditions" like "arthritis or lupus" where "the inflammation is so painful that the person must stay home" for brief periods but can otherwise do the job. *Id.* (emphasis added). In contrast, medical leave for an employee who cannot work for extended periods of time is not a reasonable accommodation for a disability. *Id.* To hold otherwise would transform the ADA into "a medical-leave statute—in effect, an open-ended extension of the FMLA." *Id.*

Credit's situation matches the latter circumstances, not the former. She did not request a few days off—or even slightly longer—for an intermittent condition. Instead, she requested three weeks of additional leave after taking 12 weeks of leave

under the FMLA. What's more, Credit alleges no other facts to suggest that the denial of the additional leave was discriminatory; for example, she does not allege that other employees were permitted to take extended periods of leave for non-disability reasons, such as academic coursework. Thus, Credit's request to extend her leave until March 1 was not a reasonable accommodation, and did not render her a qualified individual under the ADA. *See Vander Plaats v. Crisis Prevention Inst., Inc.*, 746 F. Supp. 3d 586, 596–97 (E.D. Wis. 2024).

In contrast, based on the facts alleged in the First Amended Complaint, the second accommodation could have been reasonable. Credit alleges that she could have returned to work by mid-February 2023 with other reasonable accommodations, such as light-duty work and reassignment of non-essential tasks. First Am. Compl. ¶ 19. If Credit had returned to work by mid-February—presumably, February 14—then she would have needed only five additional days of leave after she exhausted her FMLA leave on February 9. *Id.* ¶ 11. Such a short extension of her leave would have fit within *Severson*'s instruction that a "short leave of absence … may, in appropriate circumstances, be analogous to a part-time or modified work schedule," and thus a reasonable accommodation. 872 F.3d at 481; *see also Haschmann v. Time Warner Ent. Co.*, 151 F.3d 591, 601 (7th Cir. 1998) (concluding that a reasonable jury could find that a short medical leave would have been a reasonable accommodation). And light-duty work plausibly could be a reasonable accommodation depending on the Defendants' policies (which neither party describes at this stage of the case). *See Severson*, 872 F.3d at 482; *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 696 (7th Cir. 1998).

Thus, Credit plausibly alleges that she was a qualified individual because she could have completed the essential elements of her job with reasonable accommodations by February 24.[5]

ProMedica argues that Credit did not actually request these accommodations. ProMedica's Mot. at 8. Throughout the First Amended Complaint, Credit alleges that she "*could have* resumed work duties earlier, by mid-February 2013, with reasonable accommodation." First Am. Compl. ¶ 19; *see also id.* ¶ 29. But each time she mentions a mid-February start, Credit alleges only that she was *able to* start then, not that she *expressly requested* this start date. In a few other paragraphs, Credit alleges that she requested light-duty work, but does not specifically allege that she requested light-duty work in conjunction with a mid-February start date (rather than a March 1 start). *See id.* ¶ 40 ("Plaintiff requested reasonable accommodations, including a brief adjustment to her return date and/or temporary light duty."); *id.* ¶ 45 ("Credit … request[ed] reasonable accommodation with respect to the timing/terms of reinstatement."); *id.* ¶ 49 ("Credit requested a finite, employer-designated return date (March 1) and/or a brief ramp-up consistent with the offer letter and her release."). It

[5]Credit did not allege that she could return to work in mid-February in her original complaint. *See* Compl. ¶ 22. And because both pleadings were verified by Credit, *id.* at 11; First Am. Compl. at 12, and are thus "the equivalent of an affidavit," *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017), ProMedica argues that the pleadings are "contradictory" and the Court should not consider the new allegations in the First Amended Complaint, ProMedica's Mot. at 5–6. But the omission in the original complaint does not rise to the level of "contradictory or mutually exclusive assertions." *See Beal*, 847 F.3d at 902. So although the verified complaints may raise some questions about Credit's credibility later in the case, for now, the Court assumes the new allegations in the First Amended Complaint are true.

is thus unclear whether Credit requested a mid-February start date with light-duty work.

But the Court need not decide the issue because Credit can plausibly state a claim even if she did not request a mid-February start date. "[A] plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). Once she does, then "the employer must engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Bombard*, 92 F.3d at 563 (cleaned up). Here, Credit requested what she believed was a reasonable accommodation: a March 1 start date. First Am. Compl. ¶¶ 11–12, 49. And Warren Barr and Legacy *accepted* the requested accommodation on February 11 by sending Credit an offer letter confirming a March 1 return-to-work date. First Am. Compl. ¶ 18. So it makes sense that Credit never requested a mid-February start date with light-duty work as an alternative accommodation; as far as she was aware, her first-choice accommodation was acceptable to the Defendants.

If the Defendants thought that the March 1 start date was not reasonable, then they had an obligation to engage in the interactive process and discuss alternative accommodations with Credit. *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). If they had engaged in the process, Credit says that she was prepared to return to work in mid-February with light-duty work. First Am. Compl. ¶ 19. Instead, on February 24, the Defendants abruptly fired Credit without notice. First Am. Compl. ¶ 20. "This is hardly engaging with [her] to determine if a reasonable

accommodation could be made." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061–62 (7th Cir. 2014).

In sum, Credit plausibly alleges that (1) she was a qualified individual because she could return to work in mid-February with light-duty work, which could have been a reasonable accommodation, and (2) the Defendants fired her without engaging in the interactive process after initially approving her March 1 accommodation. She has thus stated claims for disability discrimination and failure to accommodate. *See Spurling*, 739 F.3d at 1062; *see also Haschmann*, 151 F.3d at 601.

**2. Retaliation**

To adequately state an ADA retaliation claim using the direct method, on which Credit relies, *see* Pl.'s Resp. Br. at 5, she must plausibly allege that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015). ProMedica argues that Credit did not engage in statutorily protected activity because her requested accommodation—a March 1 start date—was not reasonable. ProMedica's Mot. at 10. But seeking an accommodation is a protected activity regardless of whether the particular request is ultimately deemed reasonable. *See Rowlands v. United Parcel Serv. Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). So Credit plausibly alleges that she meets the first element of the ADA retaliation claim.

Credit adequately alleges the other two elements of the retaliation claim, too. She says that she was fired 13 days after she received confirmation of her requested

March 1 accommodation. First Am. Compl. ¶¶ 18, 20. And when she asked why she was fired, Credit was told to "reapply for a job when [she got] better." *Id.* ¶ 21. These facts suggest that Credit was fired—an adverse employment action—in retaliation for asking to extend her leave. Credit thus plausibly states an ADA retaliation claim.

**D. Promissory Estoppel**

Finally, Credit brings a claim for promissory estoppel, contending that she relied to her detriment on the February 11 offer letter from Warren Barr and Legacy. First Am. Compl. ¶¶ 53–56. To adequately state a claim for promissory estoppel, Credit must plausibly allege that (1) the Defendants made an "unambiguous promise" to her; (2) she relied on that promise (3) to her detriment; and (4) her reliance was expected and foreseeable to the Defendants. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009). ProMedica argues that Credit has not plausibly alleged that the offer letter was an unambiguous promise, nor that she relied on the letter to her detriment. ProMedica's Mot. at 11–13. The Court agrees.

Credit argues that the offer letter was "a specific written return-to-work/start-date promise made in the context of an ongoing employment relationship and a workforce transition." Pl.'s Resp. Br. at 7. But the First Amended Complaint does not allege that the offer letter specified a definite duration of employment or promised permanent employment. *See* First Am. Compl. ¶ 18. Without such promises, the letter merely offered Credit at-will employment. *Robinson v. BDO Seidman, LLP*, 854 N.E.2d 767, 770 (Ill. App. Ct. 2006). And an offer for at-will employment is not an "unambiguous promise" in the promissory-estoppel context. *Id.* at 770–71, 773.

Indeed, Credit alleges no details about the offer letter, other than that it contained a March 1 start date. *See* First Am. Compl. ¶ 18. So the offer letter was not an unambiguous promise. *See Sembos v. Philips Components*, 376 F.3d 696, 704 (7th Cir. 2004) (holding that an offer without "any specific position, salary, or other terms of employment" is "too indefinite … to constitute [an] unambiguous promise[] supporting liability on the theory of promissory estoppel").

Credit also fails to allege that she relied on the offer letter to her detriment. She alleges only that she prepared to return to work by obtaining medical clearance, completing onboarding paperwork, and enrolling in healthcare benefits. First Am. Compl. ¶¶ 14–17. But an "attempt to fulfill the conditions of the … promise of employment … is not the type of 'detrimental reliance' that will support a claim for promissory estoppel." *DeGroot v. Village of Matteson*, 2014 WL 3360562, at *7 (N.D. Ill. July 9, 2014). Instead, Credit must have taken other actions to her detriment, such as turning down another job or spending time and money relocating for the position. *See id.*; *Sembos*, 376 F.3d at 705. Credit does not allege that she took any detrimental actions like that. Thus, she fails to plausibly plead detrimental reliance, too.

Credit's final argument to revive her promissory estoppel claim is to cite case law on *equitable* estoppel. Pl.'s Resp. Br. at 5–8. But the First Amended Complaint did not advance a claim based on equitable estoppel, and Credit cannot now raise it for the first time. *See* 08/12/2025 Op. at 9 (dismissing Credit's attempt to recast an FMLA retaliation claim as an ADA retaliation claim during the first round of dismissal motions). In any event, even if she could now raise equitable estoppel, unlike

*promissory* estoppel, *equitable* estoppel is not an independent claim under Illinois law. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 526 (Ill. 2009). Equitable estoppel is a *defensive doctrine* used to preclude opposing parties from asserting claims or defenses. *Id.* Indeed, the cases on which Credit relies discuss equitable estoppel as a bar to a defendant's defense to an FMLA claim—not as an independent, affirmative claim in its own right. *See, e.g.*, *Reaux v. Infohealth Mgmt. Corp.*, 2009 WL 635468, at *3 (N.D. Ill. Mar. 10, 2009). What's more, the First Amended Complaint did not make a claim based on equitable estoppel, and Credit cannot now raise this claim for the first time. *See* 08/12/2025 Op. at 9 (dismissing Credit's attempt to recast an FMLA retaliation claim as an ADA retaliation claim during the first round of dismissal motions). Finally, even if Credit could raise equitable estoppel as an independent claim, she has not plausibly pled such a claim. One of the elements of equitable estoppel is detriment to the party asserting estoppel, *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 814 (7th Cir. 2019), and as just explained, Credit has not plausibly alleged that she relied on the offer letter to her detriment.

Because any attempt to re-plead the promissory estoppel claim would be futile, this claim is dismissed with prejudice. *Gen. Elec. Cap. Corp.*, 128 F.3d at 1085.

## IV. Conclusion

The motions to dismiss, R. 55; R. 58, are denied in part because Credit plausibly alleged claims for disability discrimination, failure to accommodate, and

retaliation under the ADA. But the motions are granted in part, and Credit's FMLA, common law retaliation, and promissory estoppel claims are dismissed with prejudice.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: September 4, 2026